## ALDRIDGE v. HOUSTON OIL CO. et al.

No. 15881—Opinion Filed Feb. 2, 1926.

Rehearing Denied March 23, 1926.

**Dower—Oil and Gas Lease—Annual Rentals and Royalties Distinguished—Dower Rights.**

Annual rentals and delay money under an oil and gas lease, preceding development and production of oil or gas, constitute income and profits from the land, while royalties after production constitute a conversion pro tauto, being an impairment or diminution of the fee, and the owner of a dower interest in lands covered by an oil and gas lease is therefore entitled to one-third of the annual rentals and delay money as income and profits from the use of the lands by virtue of the provisions of the Arkansas law, Mans. Dig. sec. 2571.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by Houston Oil Company against E. C. Aldridge and M. E. Templeton to determine to whom and in what proportion certain rentals under an oil and gas lease should be paid. From the judgment, E. C. Aldridge brings error. Affirmed.

This action was commenced October 3, 1923, by the Houston Oil Company filing in the district court of Seminole county its petition against E. C. Aldridge and M. E. Templeton for the purpose of having determined the conflicting claims of the two defendants to the annual rentals payable by the plaintiff under an oil and gas lease held by it covering certain lands described in its petition.

After separate pleadings had been filed by the two defendants, an agreement among all the parties as to the facts in the case was reduced to writing and filed as the evidence in the case. This agreed statement reads as follows:

"Comes now the above-named plaintiff and defendants. and submit the above-

entitled cause to the court upon the following agreed statement of facts:

"First. It is agreed that the Houston Oil Company of Texas is the owner of a good, valid, and existing oil and gas lease covering the following described real estate located and situated in Seminole county, Oklahoma, to wit: The south half of northeast quarter and the southeast quarter of northwest quarter of section 9, township 10 north and range 7 east.

"Second. That the defendant E. C. Aldridge is the owner of the fee in and to the lands above described with the exception of the dower interest in said lands, which dower interest is owned by the defendant M. E. Templeton.

"Third. That the land above described was originally allotted to Thomas Little, a full-blood Seminole Indian; that Thomas Little died on the 24th day of September, 1904, and that the devolution of his estate was governed by the laws of Arkansas; that he left surviving him as his surviving heirs at law his wife, Mollie Little, and his three children, David Little, Buddie Little and Thomas Little, Jr.; that on the 7th day of January, 1921, Mollie Yeager, formerly Mollie Little, as guardian of Thomas Little and David Little, minors, and Mollie Little, then Mollie Yeager, in her own right, and Buddie Little, an adult, made, executed and delivered upon departmental form an oil and gas mining lease to Lawrence D. Miller and Robt. G. Miller; that said lease was properly approved by the Department of the Interior, also by the county court having jurisdiction of the settlement of the estate of Thomas Little, deceased; that thereafter and on the 19th day of August, 1921, Buddie Little and his wife sold his interest in said land to M. E. Templeton, and on the 25th day of October thereafter Mollie Yeager, formerly Mollie Little, and her husband sold her interest, which was her dower interest, to M. E. Templeton; that on January 2, 1923, Thomas Little and wife sold his interest in said lands to E. C. Aldridge, and on March 13, 1923, Mollie Yeager, as guardian of David Little, sold his interest in said lands to E. C. Aldridge; that on the 7th day of February, 1923, M. E. Templeton and wife sold to E. C. Aldridge all their interest in said lands except the interest purchased from Mollie and Mat Yeager.

"It is further stipulated and agreed that the sole and only question for the court to determine is to whom and in what proportions should the rentals upon said lease and leasehold estate be paid. The defendant E. C. Aldridge claims all the rentals and the defendant M. E. Templeton claims an undivided 1-3 interest in said rentals."

Upon this agreed statement the cause was tried to the court and judgment rendered May 5, 1924, by which it was adjudged and decreed that E. C. Aldridge is entitled to two-thirds of the annual rentals and unpaid bonuses, and that M. E. Templeton, as the assignee of the dower interest of the widow of the deceased allottee, is entitled to one-third thereof, and authorizing the Houston Oil Company to pay said rentals and bonuses into court to await a final determination of the action. After unsuccessful motion for new trial, E. C. Aldridge has brought the case here by petition in error with case-made attached for review.

Davis & Patterson, for plaintiff in error.

John C. Willmott and Richard J. Roberts, for defendants in error.

Opinion by LOGSDON, C. Only one question is submitted for determination in this proceeding, that question being thus stated in the brief of plaintiff in error:

"We think the trial court erred in not holding that the holder of the dower interest was only entitled to the interest on the rental or delay money as to a one-third thereof, and that a determination of that question is the sole question to be decided by the court."

There has been no development under the lease of the Houston Oil Company, so the funds involved, and to be divided, are merely the annual rentals and delay money contracted to be paid to keep the lease in force pending development. Plaintiff in error, Aldridge, to sustain his claim to the entire fund, less interest on one-third thereof, which he claims is the only interest of the tenant for life under the dower estate, relies on the cases of Barnes v. Keyes, 36 Okla. 6, 127 Pac. 261; Strawn v. Brady, 84 Okla. 66, 202 Pac. 505; and Parker v. Riley, 250 U. S. 66.

Both the Barnes Case and the Parker Case involved the rights of life tenants and remaindermen, respectively, to share in the royalties accruing from production, and it was held in each case that the life tenant was entitled to the income (legal interest) on the amount of the royalties, the fund itself to go to the remaindermen (fee-owners) at the termination of the life estate. In the Barnes Case, after quoting at length from the leading case of Blakly v. Marshall, 174 Pa. St. 425, Rosser, C., said:

"It follows that the proceeds of the oil belong to the remaindermen, just as the proceeds of the land itself would; but the owner of the life estate would have the right to interest on the royalties produced during his life."

In the Parker Case, Mr. Justice Van Devanter said:

"The oil and gas were to be extracted and taken by the lessee, and for this royalties in money were to be paid. These minerals were part of the homestead and the lease was to operate as a sale of them as and when they were extracted. In that sense the heirs were exchanging a part of the homestead for the money paid as royalties, but no heir was surrendering any right to the others. Thus the rights of all in the royalties were the same as in the homestead. * * * In this view Julia is entitled to the use of the royalties, that is to say, the interest or income which may be obtained by properly investing them, during the same period, leaving the principal, like the homestead, to go to the heirs in general on the termination of her special right."

Neither of these cases is in point or controlling in the instant case, for the reason that the question determined in each was the interest of the life tenant in production, while in the case at bar there has been no production. In the case of Strawn v. Brady, supra, the Barnes Case and the Parker Case are the only authorities relied on to support the conclusion there announced, that the life tenant under the dower estate is entitled only to the interest on one-third of the purchase price paid for the lease, there being no production. That entirely different principles control in the Strawn Case and in the instant case from those applied in the Barnes and Parker Cases seems clearly evident. This distinction will be sought to be shown in the ensuing discussion of the instant case.

Mollie Little, upon the death of her husband in 1904, became entitled to dower in one-third of the lands of which he died seized and possessed, by virtue of Mans. Dig. Stat. of Ark., sec. 2571, then in force in what is now Seminole county. The agreed statement of facts recites that the grantee or her dower interest was also the grantee of the legal title of one of the heirs, or remaindermen, so that it is immaterial whether allotment of dower was ever actually made, as she could legally assign her right of dower to one holding the legal title. Carnall v. Wilson, 21 Ark. 62; Jacoway v. McGarrah, 21 Ark. 347. Dower consummate is a vested right to receive one-third of all rents and profits for life. 9 R. C. L. 609, sec. 50. Clearly rents and profits comprehend all income derived from any use of the premises which does not impair or diminish the fee. Until there is development and

production, an oil and gas lease conveys no interest in the land, but only a right to use the surface for the purpose of exploration. Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260; Duff v. Keaton, 33 Okla. 92, 124 Pac. 291; Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514. When production is reached, the fee is impaired and diminished to the extent of the value of the oil or gas which is brought to the surface and reduced to possession. This would not be income, but a conversion of the fee pro tanto, or, as expressed at common law, waste, which is a right prohibited to a life tenant. Rupel v. Ohio Oil Co. (Ind.) 95 N. E. 225; Marshall v. Mellon (Pa.) 36 Atl. 201; Williamson v. Jones (W. Va.) 27 S. E. 411. In Thornton's Law of Oil and Gas (3rd Ed.) p. 387, sec. 253, the author says:

"* * * Care must be taken to distinguish between rent and royalty in connection with gas and oil leases. Rent is the term applied to the privilege given to bore for gas and oil and for delay in beginning operations; while royalty is a certain percentage of the oil after it is found, or so much per gas well developed."

In the case of Carter v. Rector, 88 Okla. 12, 210 Pac. 1035, this court passed upon the question whether a bonus paid to procure an oil and gas lease was income or was purchase money paid for an interest in the land—a conversion of the fee pro tanto. It was determined that the bonus money was income, and as reasons for so holding it was said:

"What right did the grantee acquire under the lease? Merely the right to use and occupy so much of the surface of the land as was necessary to explore the premises for oil and gas, and to take therefrom these products as long as the same were found in paying quantities; not the right to the exclusive possession of the premises or to maintain an action therefor. A failure to find either oil or gas did not give the grantee the right to rescind the contract or to recover damages."

In the case of Strawn v. Brady, supra, the fund involved was a bonus paid for an oil and gas lease, just as in the Carter Case. There was no production, no impairment or diminution of the fee. Clearly that bonus was income, just as the bonus in the Carter Case was income. Being income derived from a right granted to use the surface of the land for a specified purpose, and not being a conversion or impairment of the fee, the widow should have received one-third of the bonus as her

dower in such income and profits from the land, instead of legal interest on one-third thereof.

It follows from what has been said that M. E. Templeton, the owner of the dower interest in the instant case, is entitled to one-third of the annual rentals and delay money accruing under the lease of the Houston Oil Company until such time as production shall be had under the lease. The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 19 C. J. p. 469 §39.